**NON WOVENS TECHNOLOGY, S.P.A., Plaintiff–Appellee,**

v.

**Morley P. THOMPSON, Sr., Defendant–Appellant.**

No. 02–3031.

United States Court of Appeals, Sixth Circuit.

June 18, 2003.

Before NELSON, COLE, and GILMAN, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

The district court entered summary judgment for the plaintiff, Non Wovens Technology, S.P.A., in this action for payment under a personal guarantee. The defendant, Morley P. Thompson, Sr., contends that there are genuine issues of material fact relating to whether the principal debtor defaulted—such default being a condition precedent to Mr. Thompson's obligation to pay. We believe that the undisputed facts, taken in the light of the debtor's contract with Non Wovens, compel a determination of default. We shall therefore affirm the challenged judgment.

I

In November of 1994, Non Wovens contracted with Stearns Extruded Textile Company, L.L.C. ("Stearns") to design, construct, and assemble a production line for lightweight polyester fabrics. Non Wovens was to provide the necessary machinery. equipment and accessories, as well as technicians to assist in the installation of the production line. Stearns was to pay Non Wovens $1,027,500 in advance and an additional $5,822,500, plus interest, under a series of irrevocable promissory notes.

Stearns was dissatisfied with Non Wovens' performance under the contract. According to Stearns, the delivery of the machinery was tardy, the technicians sent by Non Wovens were inexperienced, and—most important—the machinery never operated at the promised capacity or level of quality. Stearns demanded that Non Wovens correct the deficiencies, but Non Wovens was unable or unwilling to do so.

In late 1995, Mr. Thompson—who is chairman of Stearns Technical Textiles Company, a corporation that is the managing member of Stearns—met with representatives of Non Wovens in an effort to persuade Non Wovens to get the machinery to work properly. In connection with this effort, and to induce Non Wovens to provide certain assurances to an outside party, Mr. Thompson personally guaranteed payment "when due" of the notes that Stearns had issued to Non Wovens. The personal guarantee, which was executed in February of 1996, gave Non Wovens the right to proceed directly against Mr. Thompson should Stearns default on its obligation to pay.

Notwithstanding Mr. Thompson's guarantee, Non Wovens did not fix the alleg-

edly faulty machinery to Stearns' satisfaction. In early 1997, after paying Non Wovens nearly $3 million, Stearns stopped making payments on the promissory notes. According to an agreement entered into by Stearns and Non Wovens in September of 1997, "operating and financial difficulties" of Stearns "rendered it unable to meet its financial obligations" to Non Wovens. Each party to the contract now being dissatisfied with the other's performance, the September 1997 agreement contemplated a restructuring of Stearns' debt as well as renewed efforts by Non Wovens to make the machinery operate at acceptable levels of quality and capacity.

The agreement was never implemented. The machinery never worked to Stearns' satisfaction, and Stearns made no further payments to Non Wovens. Sometime before April of 2000, Non Wovens became insolvent and entered liquidation.

The liquidator, having learned of the notes held by Non Wovens and the personal guarantee, demanded payment from Mr. Thompson in April of 2000. Mr. Thompson refused to pay, and on June 2, 2000, Non Wovens sued him in federal district court. As of that date, 39 of the 40 notes had matured, but Stearns had paid off only 13 (seven of which were not paid on time). In August of 2000, Non Wovens moved for summary judgment.

In its motion, Non Wovens recited the undisputed facts that Stearns had issued certain promissory notes to Non Wovens, that Mr. Thompson had personally guaranteed payment of the notes "when due," and that Stearns had defaulted on most of the notes. Mr. Thompson responded that there were genuine issues of material fact as to whether any payments were "due," his theory being that material breaches of contract by Non Wovens relieved Stearns of its obligation to pay.

In reply, Non Wovens cited Clause 4.7 of its contract with Stearns. This provision says that:

"Buyer hereby acknowledges and accepts the irrevocability of the Notes provided for in Clause 4.1.b. above: under no circumstances a payment thereof shall be refused or delayed by Buyer and any reason for claim by the Buyer may be proposed as a right for judgement action and not as a right for suspending any payment whatsoever."

Under Clause 4.7, Non Wovens argued, payment of the notes was due regardless of whether Non Wovens had breached the contract.

The district court agreed with Non Wovens. It granted summary judgment on the issue of liability, holding that there was no genuine issue of material fact as to whether Stearns' "obligation under its contract with [Non Wovens] was due and owing."

Three weeks later, Mr. Thompson, acting on behalf of Stearns, sent Non Wovens a letter purporting to terminate the contract. The letter invoked Clause 12.3, which gave Stearns the right to terminate the contract if Non Wovens did not fulfill its performance obligations, and Clause 14.3, which required Non Wovens to refund any amounts paid by Stearns if Stearns terminated the contract. Mr. Thompson then moved for reconsideration of the summary judgment order. He argued that he had not had an opportunity to respond to Non Wovens' argument based on Clause 4.7, and that the rights of termination and repayment contained in Clauses 12.3 and 14.3 demonstrated that Non Wovens' right to payment was not absolute.

The district court denied Mr. Thompson's motion for reconsideration, holding that Non Wovens had raised Clause 4.7 in fair rebuttal of Mr. Thompson's argument

that Stearns had not defaulted on the notes. The court directed the parties to brief the issue of damages, and, after requesting additional factual submissions from the parties, the court awarded Non Wovens $4,920,964:20. Mr. Thompson filed this timely appeal from the court's final judgment.

## II

Mr. Thompson does not deny that he is liable to Non Wovens if Stearns defaulted on the notes. The question presented in this appeal is whether the undisputed facts compel a determination that Stearns defaulted – or whether, as Mr. Thompson argues, evidence that Non Wovens materially breached the contract makes default a matter to be submitted to a jury. Mr. Thompson's argument rests on the "black letter" legal principle that a material breach of contract excuses performance by the non-breaching party. If Non Wovens materially breached the contract, he says, then Stearns was relieved of its obligation to pay, and there was no default.

In the circumstances of this case, we believe that Mr. Thompson's reliance on black letter law is misplaced. The parties to a contract may agree to modify generally applicable provisions of law. See Ohio Rev.Code § 1301.02.[1] In particular, they may modify or limit the remedies that are ordinarily available. See *id.* § 1302.93(A). In Clause 4.7 of their contract, as we read it, Stearns and Non Wovens did exactly that.

On its face, Clause 4.7 obligates Stearns to pay Non Wovens regardless of any contract (or other) claim that Stearns might have against Non Wovens. Thus, although black letter law would permit Stearns to withhold payments should Non Wovens breach the contract, see, *e.g.*, Ohio Rev. Code § 1302.91, Clause 4.7 takes that particular remedy off the table. We see no reason to think that the clause means anything other than what it says.

Mr. Thompson argues that Clause 4.7 is limited by other parts of the contract, particularly Clauses 12.3 and 14.3, which provide for termination of the contract by Stearns, return of unaccepted machinery to Non Wovens, and repayment of Stearns by Non Wovens. We agree that these provisions logically suggest (without expressly stating) that Stearns' obligation to pay Non Wovens would cease if the contract were terminated. But Clauses 12.3 and 14.3 do not limit Clause 4.7 absent termination of the contract. Until such time as Stearns gave up on the project and returned the machinery to Non Wovens, Clause 4.7 precluded Stearns from suspending payment.

There eventually came a time, of course, when Stearns sought to terminate the contract. But that was not until February 27, 2001—four years after Stearns stopped paying Non Wovens, 10 months after Non Wovens demanded payment from Mr. Thompson, and three weeks after the district court entered summary judgment on liability.[2] By the time of the attempted termination, we believe, Mr. Thompson's obligation to pay was established. It could

1. Chapters 1301 and 1302 of the Ohio Revised Code correspond to sections 1 and 2 of the Uniform Commercial Code and apply to contracts for the sale of goods. Although the Stearns–Non Wovens contract involved some services, it was primarily a sales contract.

2. At oral argument, counsel for Mr. Thompson contended that a "de facto" termination occurred when Stearns stopped paying Non Wovens. Given the parties' attempt in September of 1997 to resolve disputes arising out of the contract, as well Stearns' termination letter of February 2001, we are not persuaded by that contention.

not then be altered by a change in the contractual relationship between Stearns and Non Wovens. The situation is comparable, in a sense, to that which would have been presented if Mr. Thompson had guaranteed payment of a series of negotiable notes that were transferred to a bona fide purchaser, for value, without notice of Non Wovens' failure to perform the underlying contract.

Mr. Thompson argues, finally, that Clause 4.7 is not effective as a limitation of remedies because the alternative remedy that it provides—pursuit of a "judgment action" for damages[3]—"fails of its essential purpose" due to Non Wovens' liquidation. Under Ohio Revised Code § 1302.93(B), all of the remedies prescribed in Chapters 1301 and 1302 become available if an "exclusive or limited" remedy provided by contract fails of its essential purpose—*i.e.,* if circumstances cause the injured party to be deprived of the remedy's benefits. See, *e.g., Goddard v. General Motors Corp.,* 60 Ohio St.2d 41, 396 N.E.2d 761, 764 (1979). According to Mr. Thompson, Stearns lost the benefit of the "judgment action" remedy provided in Clause 4.7 when Non Wovens entered liquidation.

We are not persuaded by this argument. For one thing, it appears that Non Wovens was still solvent in early 1997 when Stearns ceased making payments. The September 1997 agreement between Stearns and Non Wovens makes no mention of liquidation, and the liquidator does not appear in this record until the spring of 2000. We believe, therefore, that the remedy provided in Clause 4.7 had not failed of its essential purpose at the time Stearns began to withhold payments.

In any event, Stearns was never limited to the "judgment action" remedy. Clause 4.7 makes one remedy unavailable; it does not purport to make another remedy exclusive. At all times, Stearns had the ability to invoke §§ 12.3 and 14.3, terminate the contract, and stop paying Non Wovens. As we have seen, it chose not to do so (not, at least, until after Mr. Thompson's liability had been adjudicated). The election not to exercise the remedy does not change the fact that Stearns had an effective remedy available to it, regardless of Non Wovens' liquidation. The contract did not require Stearns to make payments that it had no hope of recovering.[4]

We conclude that Clause 4.7 is a valid limitation of remedies and that Stearns' undisputed failure to pay Non Wovens constituted default. Under the terms of the personal guarantee, therefore, Mr. Thompson was obligated to pay. There being no genuine dispute of material fact, and Non Wovens being entitled to judgment as a matter of law, the district court acted properly in entering summary judgment.

**AFFIRMED.**

---

**3.** Although the phrase "judgment action" is suggestive of a court proceeding, Stearns and Non Wovens agreed that any dispute arising out of their contract would be resolved by arbitration.

**4.** The contract did require Stearns to elect between maintaining the contractual relationship, trying to salvage the project, and continuing to pay Non Wovens, on the one hand, and terminating the contract, on the other hand. The absence of a remedy that would allow Stearns both to preserve the contract and to cease making payments does not, we believe, suggest that the contract's remedial provisions failed of their essential purpose.